UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JAMIE WEAVER | CIVIL ACTION NO. 1:09-cv-1954 |
| -vs- | JUDGE DRELL |
| SCHINDLER'S FAMILY, LLC. | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING AND ORDER

Before the Court is the motion for summary judgment of Defendant Schindler's Family, LLC ("Schindler" or "Defendant") (Doc. 15). Plaintiff Jamie Weaver ("Weaver" or "Plaintiff") makes claims against Defendant under Title III of the American with Disabilities Act (ADA) and for intentional infliction of emotional distress under Louisiana tort law.

Regarding the ADA claim, the parties have agreed that Weaver cannot successfully claim damages under the ADA. However, they disagree about whether she has standing to maintain a claim for injunctive relief, including attorney's fees. Defendant asserts that Weaver lacks standing because, it says, she bases her claim only on a single, isolated incident. It argues that the ADA – in line with the Constitution's more general "case and controversy" standing requirements, see *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) – does not permit a claim based on "'an isolated incident' but [instead] requires a showing of a 'policy or pervasive practice.'" (Doc. 15-2, p. 5) (quoting *Moranos v. Royal Carribean Cruises, Ltd.*, 565 F.Supp.2d 1337, 1339 [S.D. Fla. 2008]).

We agree with Defendant's analysis of the law, but we disagree with its application to this case. Specifically, making all reasonable inferences in her favor, Plaintiff plainly makes "a showing

of 'policy or pervasive practice,'" as she has testified that Defendant's employees – including the manager on duty at the time – told her repeatedly that refusing to accommodate service animals was Defendant's official policy. (Doc. 15-3, pp. 4-7). Moreover, Defendant's employees seem to have maintained this position even after being confronted by the police; the report of the officer who was called to the scene reflects Defendant's employees told him they refused to accommodate Plaintiff because of Defendant's "policy." Given that there are these two bits of evidence in the record supporting this position, we find that it would be inappropriate for us to grant summary judgment to the contrary.

More broadly, under the usual *Lujan* standing test, Defendant claims that Plaintiff does not have standing because she cannot show a sufficiently definite or immediate threat of future injury. We disagree. Plaintiff's counsel has more than adequately explained why Plaintiff has reason to use Defendant's facilities, including her close proximity and frequent trips to Natchitoches and her custom of staying in Defendant's brand of hotels when she travels. So, the only issue would seem to be if Defendant's "policy" has changed since Plaintiff's last visit. Defendant's owner claims either that: it has changed its policy; the official policy never was to discriminate and the incident occurred because its employees misunderstood its policies; or that the incident was simply a misunderstanding and both Defendant and the officer who was called to the scene are wrong that claims about "policy" were ever made.

We consider this an open question. Plaintiff presents sufficient evidence that this was Defendant's official policy in the past; aside from its own testimony, discussed below, Defendant presents no evidence that it has changed its policy or taken other steps to prevent such an occurrence in the future. Moreover, that no policy changes have been actualized is confirmed by the testimony

of its own employees. For example, the general manager of Defendant's hotel, Tracy Lynn Page ("Page"), in her September 1, 2010 deposition, when asked whether Defendant's "hotel [has] a particular policy for accommodating individuals with handicaps" said only, "I don't know that we have anything in writing, but we do have handicap rooms available and we do keep them reserved." (Doc. 17-6, p. 3). While Page elsewhere indicated that the hotel now accommodates service animals, she did not claim that this policy exists in written or official form, has been provided or explained to front-desk employees, nor that Defendant has adopted any other practice one might expect to see as a policy change, or desire to prevent another such misapplication of its policy in the future.[1] Accordingly, we consider Plaintiff capable of satisfying the ADA and the Constitution's standing requirements, the necessity of injunctive relief to be an open question, and summary judgment to be inappropriate.

Regarding the intentional infliction of emotional distress claim, as discussed below, we generally agree with Defendant's summary of the law,[2] and that this claim will be difficult for Plaintiff to sustain. However, Defendant's limited discussion of this topic does not convince us that

---

[1] One can also question Defendant's characterization of Plaintiff's injury as a "single incident," given that, allegedly, Plaintiff repeatedly requested accommodation, and even the police requested accommodation on her behalf, and Defendant still refused. In addition, by Defendant's admission, its "new" policy – or that which it adopted in response to this incident according to Page – by which it accepts services animals but requires identification for them, is still a violation of the ADA, which expressly prohibits such an identification requirement. We do not decide, but doubt, whether this new or present violations could constitute a continuing injury for Plaintiff's purposes. Nevertheless, given that this policy was self-consciously adopted as part of Defendant's response to this incident, we consider it possible evidence of Defendant's callousness in ensuring that its employees follow this law. Defendant's counsel's suggestion that this violation is "so de minimus in nature . . . that it cannot provide a basis for a claim for injunctive relief" does nothing to dispel this impression, and we consider such a claim absurd when the complained of behavior is specifically and explicitly prohibited by statute.

[2] This claim is recognized in the Louisiana Civil Code, article 2315. It requires that (i) the offending conduct be extreme and outrageous; (ii) Plaintiff's emotional distress be severe, and (iii) the distress have been certain or substantially certain to result from Defendant's conduct. See *White*, 585 So.2d at 1209.

this claim should presently be dismissed. The main case Defendant cites in its favor is *White v. Monsanto Co.*, 585 So.2d 1205 (La. 1991), where an employee sued her employer for this tort after her supervisor yelled at her for less than five minutes. While dicta in that case articulates a high standard for recovery resulting from this tort, we note that the Louisiana Supreme Court did not consider Plaintiff's seemingly exceedingly weak claims to be so far-fetched as not to warrant extended discussion. Otherwise, Defendant cites no case where a disabled Plaintiff claiming an express violation of federal law[3] – or a Plaintiff in any other analogous situation – had her claim under this tort dismissed on summary judgment. Based on this limited review of the cases to the contrary and the otherwise straightforward elements of this tort which (viewed in the light most favorable to her and as discussed below Plaintiff seems capable of meeting) we do not find that summary judgment on this claim would be appropriate at this time.

In addition, we disagree with Defendant's characterization of Plaintiff's injury. While most of the interaction by Defendant's employees was indeed with Plaintiff's father, Plaintiff was involved in the incident, including by having Defendant's employees call the police on her allegedly only for attempting to exercise her federally protected civil rights. Likewise, considering that Defendant's employees perceived the situation was sufficiently troublesome to warrant calling the police, it seems disingenuous to now claim that "[t]he entire situation resolved itself fairly quickly." (Doc. 15-2, p. 8).[4] Consequently, while we recognize that Plaintiff's burden under this claim is a

---

[3] Defendant does discuss several Civil Rights Act cases to which this tort was attached where the Plaintiff's case was dismissed on summary judgment. Our experience with some – though decidedly not all – Plaintiff's creativity regarding these claims convinces us that these cases are not analogous here.

[4] This remark is unfortunately part of a pattern in Defendant's motion and reply, also discussed in fn. 1 above, of Defendant minimizing the importance of the interests protected by this statute, an attitude we encourage him to change should this case proceed to trial.

high one and her injury may ultimately be insufficient to meet it, it is certainly not helpful for Defendant to minimize that injury in ways that are inconsistent with the evidence in the record.

Regardless and in all, excepting Plaintiff's claim for damages under the ADA, based upon the evidence in the record and the legal arguments presented by the parties, we find that summary judgment is presently unwarranted and Plaintiff's claims should survive for further adjudication. Accordingly:

IT IS ORDERED that Defendant's motion for summary judgment (Doc. 15) is GRANTED IN PART, dismissing Plaintiff's damage claim under the ADA, and is otherwise DENIED.

SIGNED on this 19th day of April, 2011 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE